Fifth Department, December Term, 1894.          [Vol. 83.

Lewis Richards, Appellant, *v.* Lewis B. Ross, Respondent.

*Establishing a sale to the defendant of goods delivered to a third person.*

If it be shown, upon the trial of an action brought to recover the purchase price
of a set of harness, that the defendant selected the harness, ascertained the price
thereof, ordered it changed so as to fit a team, and after the harness was deliv-
ered to a third person said that it was all right and that the vendor would get
his pay, there is sufficient evidence to establish a sale of the harness to the
defendant.

Appeal by the plaintiff, Lewis Richards, from a judgment of the
County Court of Ontario county in favor of the defendant, entered
in the office of the clerk of the county of Ontario on the 9th day
of August, 1894, upon the decision of the court reversing the judg-
ment of a justice of the peace of the town of Geneva, Ontario
county, in favor of the plaintiff.

*W. S. Moore,* for the appellant.

*George L. Bachman,* for the respondent.

Haight, J.:

This action was brought to recover the sum of twenty-four dol-
lars, the purchase price of a harness alleged to have been sold by
the plaintiff to the defendant. The justice rendered judgment for
the plaintiff, but the County Court reversed upon the ground that
the evidence submitted by the plaintiff was not sufficient to sustain
the judgment.

The question thus presented involves a careful examination of the
evidence.   The plaintiff testified that about the eighteenth of
November last " Mr. Ross came into my store, and said he had sold
a big team of horses to Mr. Hemingway, and he had to have a
set of harness for them.   He looked at two or three different sets of
harness and said, ' This one would do if I would change it, and fix it
up a little it would be all right.'   I had the bill charged to Mr. Ross.
I didn't know this stranger.   Q. What further was said, if any-
thing, at that time?   A. On the 24th this stranger came along, and
I let him have the harness.   On the 17th or 18th of November,
when Mr. Ross was there, I told him I had charged the harness to

him. Q. What did you do there at that time about this harness? A. I showed it to him. He said that will do. That is all right. Some of it had to be changed, made larger, and I fixed them. Q. What further was said, if anything? A. I told him I charged the harness to him. Q. Was anything said about the price? A. $24, yes, sir. Q. Have you now stated all that you remember of that conversation at that time? A. At that time, yes, sir. Q. Was anything said about the time the harness would be ready, or when he would come for it? A. About a week. Q. What did you do about it afterwards? A. I changed the main strap 3 or 4 inches, it had to be made a little larger. Q. Did any one afterwards come after the harness; if so, when was it? A. It was on the 24th; this stranger, Mr. Hemingway, came. He was alone. Q. What did he do with it? A. Carried the harness over to the public sheds, Mr. William Baron's sheds. Q. Is that all? A. That is all. Q. Did you afterwards have a conversation with Mr. Ross about the payment for the harness? A. Yes, Mr. Ross came into my store about 6 or 8 days after the 24th, and said the harness was all right, and I would get my pay. Q. Has this harness ever been paid for? A. No, sir."

It appears to us that this evidence was sufficient to establish a sale. The defendant selected the harness, ascertained the price, ordered it changed so as to fit the team, and after the harness was delivered said that it was all right, and that the plaintiff would get his pay.

The learned county judge characterized this testimony as " absurd to suppose that the defendant would be buying harnesses for horses he had sold." We do not think that this conclusion necessarily follows. The defendant said that he had sold his big team of horses to Hemingway, and had to have a set of harness for them. We think the inference that the harness was included in the sale with the horses is permissible.

It further appeared that the defendant had not sold his horses to Hemingway; that the sale was not completed, and the horses never left the possession of the defendant; that when Hemingway took the harness from the plaintiff's shop he took it to the defendant's residence, where it ever since has remained. True, the defendant's son, who still resides at home with his father, claims to have purchased the harness from Hemingway, but the justice evidently did

not believe this.   This son had testified that he was with Hemingway when Hemingway purchased the harness; that they went into the plaintiff's place together; that the plaintiff took down several harnesses and showed Hemingway until he came to one that suited him; that he then said he would fix the harness so that it would be all right and have it ready within a week, and that nothing was said about the price.   This was positively denied by the plaintiff.

The defendant Ross was sworn as a witness in his own behalf, but he carefully avoids denying the essential statements made by the plaintiff.   He starts in his testimony by stating that he was not in the plaintiff's store on or about the seventeenth or eighteenth of November last with one Hemingway.   The plaintiff did not state that the defendant was in his store with Hemingway.   The defendant then skips over that which was detailed by the plaintiff in reference to the selecting of the harness and the ordering of it, and next speaks of the bringing of the harness by Hemingway to his place.   He does not deny the conversation in which the plaintiff told him that he had charged the harness to him, and that he said it was all right.   He only denies that he said he would pay for the harness, or that the plaintiff would get his pay therefor.   It is, therefore, apparent that the justice had good reason for believing the testimony of the plaintiff to be correct.

The judgment of the County Court appealed from should be reversed and that of the justice affirmed, with costs in this and the County Court.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Judgment of the County Court of Ontario county appealed from reversed and that of the justice affirmed, with costs in this and the County Court.